## RECORD NO. 09-1038

**IN THE**

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

———————

RAYMOND JAMES FINANCIAL SERVICES INCORPORATED,

*Plaintiff-Appellee,*

v.

THOMAS W. BISHOP;
STEVEN H. HAMANT;
TIMOTHY E. SCANLON,

*Defendants-Appellants,*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

(Hon. Robert E. Payne, Judge)

———————

## OPENING BRIEF OF APPELLANTS

———————

Jay J. Levit
LAW OFFICE OF JAY J. LEVIT
10132 West Broad Street
Glen Allen, Virginia 23060
Telephone: (804) 270-4600
jaylevit@msn.com

Scott G. Crowley, Sr.
CROWLEY & CROWLEY
1800 Bayberry Court, Suite 102
Richmond, Virginia 23226
Telephone: 804) 282-5303
cclawva@aol.com

*Counsel for Appellee*
*Thomas W. Bishop*

*Counsel for Appellants*
*Steven H. Hamant & Timothy E. Scanlon*

**LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477**
**A Division of Lantagne Duplicating Services**

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. **09-1038**    Caption: **RAYMOND JAMES FIN'L SERVICES V. BISHOP ETAL.**

Pursuant to FRAP 26.1 and Local Rule 26.1,

**THOMAS W. BISHOP** who is **APPELLANT** ,
(name of party/amicus)            (appellant/appellee/amicus)

makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?
    ☐ YES    ☒ NO

2.  Does party/amicus have any parent corporations?
    ☐ YES    ☒ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
    ☐ YES    ☒ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
    ☐ YES    ☒ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)
    ☐ YES    ☒ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?
    ☐ YES    ☒ NO
    If yes, identify any trustee and the members of any creditors' committee:

JAY J. LEVIT
J. Levit, COUNSEL
(signature)

JAN. 27, 2009
(date)

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. __09-1038__          Caption: __Raymond James Financial Servs, Inc. v. Thomas W. Bishop__

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____Steven E. Hamant_____ who is _____appellant_____ ,
(name of party/amicus)                (appellant/appellee/amicus)

makes the following disclosure:

1.   Is party/amicus a publicly held corporation or other publicly held entity?
     ☐ YES     ☑ NO

2.   Does party/amicus have any parent corporations?
     ☐ YES     ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
     ☐ YES            ☑ NO
     If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
     ☐ YES     ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)
     ☐ YES     ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?
     ☐ YES     ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

_____                    _____January 27, 2009_____
(signature)                                              (date)

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. <u>09-1038</u>          Caption: <u>Raymond James Financial Servs, Inc. v. Thomas W. Bishop</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>    Timothy E. Scanlon    </u> who is <u>        appellant        </u>,
     (name of party/amicus)              (appellant/appellee/amicus)

makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?
    ☐ YES          ☑ NO

2.  Does party/amicus have any parent corporations?
    ☐ YES          ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
    ☐ YES          ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
    ☐ YES          ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)
    ☐ YES          ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?
    ☐ YES          ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

_____          _____
           (signature)                              January 27, 2009
                                                        (date)

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ……………………………………………………… i

JURISDICTIONAL STATEMENT…………………………………………….1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW………....1

STATEMENT OF THE CASE…………………………………………………2

STATEMENT OF FACTS…………………………………………………...3

SUMMARY OF ARGUMENT…………………………………………………12

ARGUMENT…………………………………………………………………....13
      Standard of Review……………………………………………………13
      Discussion………………………………………………………...…14

CONCLUSION………………………………………………………………….29

REQUEST FOR ORAL ARGUMENT………………………………..……30

CERTIFICATE OF COMPLIANCE…………………………………..……31

CERTIFICATE  OF SERVICE………………………………………..……32

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                        <u>**PAGES**</u>

Apex Plumbing Supply, Inc. v. U.S. Supply, Inc., 142 F.3d
188, 193-194 (4th Cir. 1998)……………………………………….…25, 26

Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 203 n. 4,
76 S.Ct. 273, 276 n. 4, 100 L.Ed. 199, 205 n. 4 (1956)……………….......24

Farkas Case, 806 F., Supp. 84, 87 (E.D. Va. 1992)…………………………25

Hall Street Associates v. Mattel, Inc., 552 U.S. _____,2008…………….28

Miller v. Prudential Bache Sec., Inc., 884 F.2d 128, 130 (4th Circ. 1989),
cer. Denied, 497 U.S. 1004 (1990)………………………………………..23

National R.R. Passenger Corp. v. Chesapeake & Ohio Ry. Co., 551 F.23
136, 142 (7th Cir. 1977) ………………………………………………….24

Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 991 F.2d 141,
147 (4th Cir. 1993) ………………………………………………………21

Qorvis Communications, LLC v. Wilson, (4th Circuit, December 3, 2008) 27, 28

Remmey v. Paine Webber, Inc., 32 F.3d 143, (4th Cir., 1994)
cert. den., 513 U.S. 112 (1995)……………………………………………14, 20, 26

Steelworkers v. Enterprise Corp., 363 U.S. 593, 596 (1960)…………….....22

Textile Workers Union of America v. American Thread Co., 291 F.2d
894, 896 (4th Circ. 1961)…………………………………………………24

Three S Delaware v DataQuick, 492 F. 3d 520, 531-532 (4th Cir. 2007)…21

United Steelworkers of America v. American Manufacturing Co.,
ante, p. 564………………………………………………………………..23

Westvaco Corporation v. United Paperworkers, 171 F.3d 971, 978
(4th Cir., 1999)…………………………………………………………….28

## **STATUTES**

9 U.S.C. §1…………………………………………………………..24

9 U.S.C. §9……………………………………………………...1

9 U.S.C. §10…………………………………………………….2

26 U.S.C. §1291…………………………………………………...1

28 U.S.C. §1331…………………………………………………...1

28 U.S.C. §1332…………………………………………………...1

iii

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over appellants' Motions to Confirm and appellee's Motion to Vacate the award issued by an arbitration panel convened by the National Association of Securities Dealers ("NASD") under Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9 (jurisdiction to confirm or vacate arbitration awards); under 28 U.S.C. § 1331 (federal question jurisdiction); and under 28 U.S.C. § 1332 (diversity jurisdiction). The District Court vacated the arbitration award by Order dated December 18, 2008, which Order disposed of all parties' claims.

This Court has jurisdiction under 26 U.S.C. § 1291 (appellate jurisdiction over all final orders of District Court).

The appellants timely filed their Notice of Appeal with the District Court on December 19, 2008, within 30 days of the date of the final Order.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Did the District Court err in vacating the arbitral award contrary to established precedent in the Fourth Circuit and in the Supreme Court, holding that arbitration awards under the FAA are final and binding, not subject to legal and factual review by a District or Circuit Court?

Did the District Court further err by engaging in appellate review, making findings of fact and reaching its own conclusions of law of with respect to the issues decided by the arbitration panel?

## STATEMENT OF THE CASE

The appellants commenced an arbitration proceeding with the National Association of Securities Dealers (NASD), alleging wrongful termination of employment. On December 12, 2006, after five days of hearing, the arbitration panel issued an award of approximately $300,000 in favor of appellants. In its written opinion, the panel sustained claims of appellants which the panel expressly recognized as arising out of their termination of employment. Appellee Raymond James moved to vacate the award under the Federal Arbitration Act (FAA), 9 U.S.C. § 10. The District Court remanded the matter to the panel for clarification of its award. Thereafter the panel issued its written re-affirmance of its award.

By Memorandum Opinion and Order dated December 18, 2008, the District Court vacated the panel's award on the grounds that the arbitrators exceeded their authority, and that their decision did not draw its essence from the employment agreements of the appellants.

## STATEMENT OF FACTS

1.   Appellants were financial advisors affiliated with RJFS pursuant to Financial Advisor ("FA") Agreements to work in a branch managed by fellow claimant Thomas W. Bishop, identified by RJFS as "Branch 67H."  (JA-270, 280 and 288)

2.   On April 27, 2004, without prior warning or explanation, appellee RJFS notified appellants that it was "terminating your registration with RJFS, effective with the close of business, five days from today."  The same notice stated that the action was taken "largely due to the series of complaints which have occurred in your office."  (JA-302)

3.   Two of the aforementioned complaints in the appellants' office became the subjects of arbitration claims filed against appellants and defended by Terrence Bostic, Esq., in-house counsel for RJFS.  One was styled <u>Steve Taton v. RJFS, Timothy Scanlon and Steven Hamant</u>, NASD Case No. 03-04051).  That arbitration was commenced on May 20, 2003 and concluded with an award issued October 29, 2004, and thus was pending before the appellants were terminated. The second was styled <u>Gary M. Stewart v. RJFS and Thomas W. Bishop</u> (NASD No. 04-02340).  It was commenced in April of 2004 and was resolved in December of 2004.  (JA-190-91)

3

4.  In or about July of 2005, the appellants contested and the alleged the wrongful closure of their branch and termination of their FA Agreements by submitting to the NASD an Arbitration Uniform Submission Agreement (JA-158), along with a Statement of Claims (JA-177), which alleged:  (1) wrongful discharge, (2) breach of each FA Agreement, (3) tortious interference with contract, (4) common law and statutory conspiracy, (5) violation of the Virginia Retail Franchising Act, and (6) violation of just and equitable principles of trade.

5.  Appellee RJFS agreed to arbitration by filing its own Arbitration Uniform Submission Agreement (JA-172) and an Answer, Affirmative Defenses and Counterclaim (JA-177).   RJFS thereafter submitted a Motion to Dismiss (JA-214), and a Memorandum in Support (JA-217).  RJFS' argued that the FA Agreements authorized it to terminate appellants with five (5) days' notice, without cause.

6.  Appellant Bishop submitted a Response in Opposition to the Motion to Dismiss (JA-244).  Appellants Hamant and Scanlon submitted their separate Memorandum in Opposition to RJFS' Motion to Dismiss (JA-253).

7.  Appellants argued that RJFS violated the provisions of its own Compliance Manual calling for "heightened supervision" and other forms of progressive discipline in the event that a branch has "behavioral problems" or becomes the subject of "third party complaints."  (JA-255, 267-69).

4

8. Appellants also set forth decisional law in the securities industry requiring just cause for terminations where the governing documents subject the dispute to arbitration. (JA-259-61)

9. On May 11, 2006, the arbitration panel issued an Order that denied RJFS' Motion to Dismiss. (JA-353)

10. As part of the claim for liability and damages, appellants submitted dozens of exhibits, audio recordings of telephone conversations, letters and e-mail messages, and oral testimony of witnesses, including appellants. This was presented over the course of five days of hearings. (JA-375-76) The appellants also submitted damages calculations and supporting documentation. (JA-324, 336 and 343) The appellants gave oral testimony in support of their claim for damages. (JA-375)

11. On December 12, 2006, the three-member arbitration panel issued an award in favor of appellants, specifically: Hamant damages of $74,050.00; Scanlon damages of $72,050.00; and Bishop damages of $156,050.00. (JA-352, 354)

12. Among other reasons, the panel stated that RJFS' and appellants' lawyer in the Taton arbitration proceedings, Mr. Bostic, was aware that appellants' branch was under RJFS' "heightened supervision," and yet failed in his duty to advise

them of such.  As a result, he violated his ethical obligations and RJFS' policies

requiring that appellants be so notified.  The Award stated in pertinent part:

> Having assumed the role and responsibilities of legal counsel in
> relation to its registered representatives, Respondent is held to the
> highest ethical obligations and fiduciary duties that would apply to a
> lawyer and law firm duly licensed to practice law in the
> Commonwealth of Virginia and engaged in business dealings with its
> legal client. . . .   In addition, Respondent failed to act in accordance
> with the standards of business fairness and good faith **required by
> NASD rules** in not providing these Claimants with notice and
> warning that they were under a higher level of supervision to the
> extent stated in Respondent's own policies and procedures that its
> registered representatives should be entitled to rely upon, and in not
> providing the same notice and warning and in not sharing the
> communications between Respondent and these Claimants' legal
> counsel, who was also representing Respondent, regarding
> Respondent's higher level of supervision of these Claimants **and its
> intention to terminate its relationship with these Claimants**.
> [Bold type added.]

(JA-354)

13.  Turning its attention to Mr. Bostic's withdrawal from Bishop's

representation in the Stewart arbitration, the panel then concluded:

> The Panel also believed that in light of the above described high
> fiduciary duty and ethical obligations, that withdrawal of legal
> representation during a pending arbitration both prejudiced some or
> all Claimants' litigation interest and made their transfer to other
> Raymond James Financial Services, Inc. branch offices impossible as
> a practical matter.

(JA-354)

6

14.  By letter dated April 11, 2008, in compliance with this Court's Order of December 18, 2007, the arbitration panel clarified its award as follows:

> It is the finding of the panel that the evidence was clear that the broker-dealer provided legal representation to the claimants through its lawyer employee in a matter involving a business relationship between the employer and claimants that was also adversarial with a clear conflict of interest.

> The evidence showed that this included the fact that claimants were billed (by the broker-dealer for its own account) through their registered representative compensation accounts, itemized hourly time for legal services, provided by the broker-dealer's employed lawyer.

> There was evidence also presented, including e-mails, which showed that the respondent's attorney favored the interest of his employer broker-dealer to the disadvantage of the claimants, who were also his clients.  It is the position of the panel that if a corporation employs a lawyer to provide legal services that corporation is engaged in the practice of law.  As such, it is held to the same standard as a law firm and owes to its clients the highest degree of fiduciary duty.  If it chooses to engage in the business with such clients, it is obligated to place the interest of those clients ahead of its own.

> The broker-dealer in this case failed in that obligation and the claimants suffered losses pertaining to the issues for which the respondent provided its lawyer.

(JA-362-63)

15.  A final follow up clarification letter from the panel dated June 4, 2008 states:

> The unauthorized practice of law was **one among other factors** considered by the panel and that considering the case **as a whole** believes the liability decision to be just and appropriate.

7

(JA-365-66) [Bold type added.]

16.  The panel proceeded to re-affirm the awards to the appellants in the same amounts as awarded originally on December 12, 2006. (JA-366)

17.  On January 12, 2007, plaintiff filed in U.S. District Court in Richmond its motion to vacate (JA8) an arbitration panel decision rendered on December 12, 2006 (JA 352).  On January 18, 2007, plaintiff filed its amended motion to vacate (JA 12), and sent a copy to the arbitration panel (JA 144).  Thereafter, numerous briefs were filed by the parties with the District Court, and oral arguments were given (see e.g. (JA 72-100).  The District Court's December 18, 2007 opinion and order (JA 106, 128) denied plaintiff's then latest motion to vacate without prejudice, and remanded the matter to the arbitration panel "for a clarification of the basis upon which the award of compensatory damages was made to each of the Claimants."

18.  Thereafter, plaintiff filed its renewed motion to vacate on April 28, 2008 (JA 132).  Raymond James' three motions to vacate were filed under the Federal Arbitration Act (FAA), 9 U.S.C. §10, and 28 U.S.C. §1332.

At page 17 of his December 18, 2007 initial memorandum opinion (JA 122), Judge

Payne states:

8

However, considering that (1) in summarizing the claims, the panel said that all claims asserted by the Defendants **"relate to the termination of Claimants' [Defendants'] employment,"** (2) the frequent references to termination of employment in the statement of reasons **(and in the briefs submitted to the panel),** and (3) the fact that **the Claimants' proof of damages consisted of the alleged loss of the benefits of the employment contract**, it seems that the reason for the award is **wrongful termination** because there was, in the view of the arbitrators not cause for the termination. If that was the arbitrators' intent, judicial review must proceed with that in mind." [Bold type added.]

19. In part one (dated April 11, 2008) (JA 362) of its two-part response to Judge Payne's remand for clarification of the basis for which compensatory damages were awarded, the arbitration panel expressly reaffirmed its December 12, 2006 decision and award (JA 352). See e-mails noted at (JA 363); e-mails, (JA 304, 305, 308, 310). The arbitration panel further stated that it did not have the damage information before it and requested claimants to submit supporting calculation of damages. Claimants had each previously submitted (JA 405) to the arbitration panel at the arbitration hearing their three damage exhibits (JA 324, 336, 343), and their testimony was given in respect to these exhibits at the five-day arbitration hearing held in June and November, 2006 (JA 325).

20. In its June 4, 2008 clarification (part-two) (JA 365), in response to Judge Payne's remand order, the arbitration panel states in its opening paragraph:

As per the letter of April 11, 2008 [part-one], the panel affirmed the liability of the respondent, Raymond James Financial Services, Inc. The unauthorized practice of law was **among other factors** considered by the

9

panel and that considering the case **as a whole** believes the liability decision to be just and appropriate….The panel makes its decision based upon the material provided by the parties [at the arbitration hearing <u>only</u>] and it affirms the awards earlier determined [in the same three unequal dollar amounts, one amount for each claimant]…. [Bold type added.]

21.   Plaintiff's renewed motion to vacate (JA 132) was filed on April 28, 2008.  In paragraph 6 of its renewed motion to vacate, plaintiff correctly states that the arbitration panel on remand had "no authority to take additional evidence on damages".  The arbitration panel took no additional evidence, and reviewed the three damage exhibits (JA 324, 336, 3343), without objection (JA 365), previously introduced <u>at the arbitration hearing</u>, one for each claimant (JA 405).

22.   During oral argument before Judge Payne on July 26, 2007, at page 17 of the transcript the following colloquy appears between Raymond James' counsel and Judge Payne (JA 40):

> MR. COCHRAN:  Well, we're required to arbitrate it, Your Honor.  It wasn't Agreement to arbitrate it.  We're required to arbitrate.
>
> THE COURT:  Well, you agreed to it.  The fact you-all probably pushed it.  The people up there in the brokerage industry are just enthralled with arbitration and  this is what they get.  **There's a part of me that says you asked for it, you got it.  That's enough. Leave it alone.  Get out of here.** [Bold type added.]

23.   After the District Court ordered remand to the arbitration panel for clarification (JA 128) over defendants' objections, defendants appealed the

remand.  The appeal was dismissed as interlocutory (JA 129).  The arbitration

panel clarified and responded in two parts (JA 362, 365).  The District Court has

now concluded anew that the April 11, 2008 (part one) clarification alone

constitutes a new, different arbitral opinion (JA 140-142).  This new conclusion is

contrary to the District Court's prior conclusion that the arbitration panel found

defendants were wrongfully terminated (JA 122).

     24.  Primarily, the District Court finds a new arbitral opinion limited

to a finding that Raymond James engaged in the unauthorized practice of

law or breach of fiduciary and legal duties (JA 399), a view received by

Raymond James' counsel with considerable hesitation (JA 141-142).

Secondarily, the District Court finds that defendants were employees at will.

As such, the District Court reasons, the arbitration panel's decision did not

draw its essence from the employment contract (JA 400).  Thirdly, the

District Court holds that the arbitration panel manifestly disregarded the law

on damages, and relies on what the District Court reasons must have been in

the mind of the panel (JA408).  At the same time, the District Court states

that "the letters of clarification are not really very clear at all respecting the

legal basis for the finding of liability (JA391).

     25.  In connection with the Statement of Claims (JA 176),

the following colloquy between Raymond James' counsel and

Judge Payne at oral argument on July 26, 2007, took place (JA 34-35):

> MR. COCHRAN: Well, the problem, Your Honor, is that the claims are not well articulated, but they make a claim for wrongful termination. They make a claim for breach of fiduciary duty. They make a claim for tortious interference. They make a claim for Mr. Bostic having wrongfully withdrawn.

26.   At all material times the primary position of Raymond James was that the defendants were employees at will (JA 222-223). Raymond James filed a motion to dismiss with the panel (JA 214), and defendants filed opposing briefs (JA 244, 253). The panel denied the motion to dismiss (JA 353).

## SUMMARY OF THE ARGUMENT

Decades of Fourth Circuit and Supreme Court precedent have established that decisions rendered by arbitration panels are accorded extraordinary deference. By submitting their dispute to arbitration, parties agree to accept the award as final and binding, except in the most extraordinary of circumstance. No such extraordinary circumstances existed in this case; therefore, affirming the District Court's vacatur of the award would undermine the federal policy

12

that encourages litigants to resolve their dispute quickly and inexpensively outside of court. It would signal to the losing parties that arbitration is not final, not binding, and that they may re-try their cases before a federal court judge.

The District Court found facts contrary to those found by the panel, and refused to consider the law applicable to wrongful termination of a broker's employment in the securities industry. Specifically, the District Court rejected the panel's conclusion that by virtue of having its in-house attorney defend appellants against complaints immediately preceding appellants' termination from employment, that attorney-client relationship engendered a duty on the part of the in-house attorney to inform appellants that appellee was preparing to terminate their employment.

The District Court also failed to defer to the arbitration panel's consideration of the appellants' claim for damages, and instead concluded – contrary to the Arbitration and District Court record-that appellants' somehow did not state a claim for wrongful termination and did not submit evidence of damages for wrongful termination.

By vacating the arbitration award for appellants, the District Court exceeded its limited and narrow scope of review.

13

## ARGUMENT

**Bedrock Supreme Court and Fourth Circuit Precedent On FAA Arbritration Finality Limit District and Circuit Courts To Narrow Review. In Vacating the Decision of the Arbitration Panel, the District Court Exceeded Its Authority For Limited, Narrow Review.**

### Standard of Review

In Remmey vs. Paine Webber, Inc., 32F.3d.143, 151(4th Cir.1994), cert. den., 513 U.S. 112(1995), the Fourth Circuit. States:

> There is no doubt that the arbitrators in this case were presented with evidence that could have supported an award in favor of either of the parties....**It is not our function as a reviewing Court, however, to revisit the arguments and evidence presented to the arbitrators.** Rather, our role is limited to determining whether the arbitration process itself was flawed."  [Bold type added.]

At 32 F.3d 146 in Remmey the Fourth Circuit accordingly states: "Thus, in reviewing arbitral awards, a district or appellate court is limited to determining 'whether the arbitrators did the job they were told to do -- **not whether they did it well, or correctly, or reasonably, but simply whether they did it'".**  [Bold type added.]

### Discussion

There were five days of hearings before the arbitration panel (JA 356).  The five days of hearings were June 22, 2006 and June 23, 2006 and November 27, 28, 29, 2006.  These days of hearings were preceded by two telephone sessions on

14

January 10, 2006 and May 9, 2006, as well as, a final telephone conference with the panel and the parties on December 7, 2006 (JA 355-356). The arbitration panel issued its award on December 12, 2006 (JA 357). Raymond James filed its original motion to vacate on January 12, 2007, and the case was assigned to Judge Robert E. Payne. Raymond James filed its amended motion to vacate (JA 12) on January 18, 2007. Raymond James filed its renewed motion to vacate with Judge Payne on April 28, 2008 (JA 132).

During the course of proceedings before Judge Payne, the defendants (Bishop, Hamant and Scanlon), sent a letter dated December 14, 2007 (more than a year after the December 12, 2006 arbitration panel's decision) inquiring as to when a decision from Judge Payne could be expected on the pending motion to vacate the arbitral award (JA 104). Four days later, Judge Payne issued his order (JA 128) denying the amended motion to vacate without prejudice, and remanding the matter to the arbitration panel for clarification. The arbitration panel issued two letters of clarification, the first on April 11, 2008 (JA 362) and the second June 4, 2008 (JA 365). On September 26, 2008 (JA 378), the defendants Bishop, Hamant, and Scanlon by their respective counsel, again requested Judge Payne to advise them as to when he anticipated rendering his decision on Raymond James' renewed motion to vacate. By letter dated October 2, 2008 (JA 379) Judge Payne

responded stating that the case was "in line to be considered now that it is right for decision."

Previously, by letter dated August 14, 2008 (JA 374), approximately twenty months after the arbitration panel's issuance of its December 12, 2006 decision, counsel for Raymond James sent a letter to Judge Payne enclosing the entire transcript from the arbitration hearing, to which was attached the index to the transcript of the five days of arbitration hearings (JA 375-376). The arbitration hearing transcript consists of several hundreds of pages as reflected in the index of the hearing transcript (JA 375-376). On December 17, 2008, more than two years after the arbitration panel issued its December 6, 2006 decision, Judge Payne issued his order and memorandum opinion vacating the decision of the arbitration panel, as well as his thirty-three page memorandum opinion (JA 380). Judge Payne's prior memorandum opinion (JA 106) consists of twenty-two pages, so that in all Judge Payne wrote two opinions totaling fifty-five pages.

In his second and final memorandum opinion dated December 17, 2008, Judge Payne concludes that the arbitration panel held that Raymond James engaged in the unauthorized practice of law (see first two lines at top JA 403). Judge Payne then links what he views as the primary ruling of the arbitration panel to what he also views as the exclusive liability finding of the panel that there was a fiduciary relationship between Raymond James and the defendants, Bishop,

16

Hamant, and Scanlon (JA 403). Judge Payne reaches these conclusions, which form the basis for his vacating the decision of the arbitration panel, even though the panel states that all of the defendants' causes of action, including but not limited to breach of fiduciary and legal duties, "relate to the termination of Claimants' [Bishop, Hamant, and Scanlon] employment with Respondent [Raymond James] (JA 353). Judge Payne so concludes even though in giving some of its reasons for its decision, the arbitration panel states that the unauthorized practice of law was only one factor "among other factors leading to this decision" (JA 354). Judge Payne reaches his stated conclusions even though the arbitration panel in its second clarification letter dated June 4, 2008 (JA 365), states that "The unauthorized practice of law was one among other factors considered by the panel and that considering the case as a whole believes the liability decision to be just and appropriate."

Judge Payne reaches his final stated conclusions, even though in his initial December 18, 2007 memorandum opinion he states "because a reasonable reading of the text [of the arbitration panel opinion] requires the conclusion that the arbitrators did **not** predicate the award of compensatory damages on the finding of 'unauthorized practice law' setforth in that sentence" (JA 115-116). [Bold type added.] All of this occurred after Judge Payne's first decision of December 18, 2007 at page 17 thereof (JA 122), that "it seems that the reason for the award is

17

**wrongful termination** because there was, in the view of the arbitrators not cause for the termination." If that was the arbitrators intent judicial review must proceed with this in mind." [Bold type added]

A review of each of Judge Payne's memorandum opinions, as well as the exchanges between counsel for the parties and Judge Payne during extensive oral arguments as shown in each of the transcripts in the appendix, reveals that Judge Payne and counsel for Raymond James have from the outset embraced the position that Bishop, Hamant, and Scanlon were employees at will, who were entitled to five days notice of termination, and nothing more. See, e.g., JA 126 (last four lines)-127. The court and Raymond James counsel, but not the panel, relied <u>solely</u> on paragraph 3 in Bishop's employment agreement (JA 290), in paragraph 3 in Scanlon's agreement (JA 274), and on paragraph 3 in Hamant's agreement (JA 282). But each of these agreements also provides that the term "Regulatory Authorities" includes the National Association of Securities Dealers (NASD) (JA 274, 282, 290). Further, each of these agreements provides that "due to the unique nature of the securities brokerage business, many of the activities contemplated under this Agreement are controlled by laws, both Federal and State, or rules, regulations and interpretations of the Regulatory Authorities [not a court]" (JA 276, para.12; 284, para.12; 294, para.17).

18

As provided in these Agreements, the arbitration panel interpreted the NASD rules, stating that Raymond James "failed to act in accordance with the standards of business fairness and good faith **required by NASD rules** in not providing these Claimants with notice and warning that they were under a higher level of supervision… and [Raymond James'] intention to terminate its relationship with these Claimants" (JA 354).  The at will issue was fully briefed by counsel for Raymond James (JA 222-223) in connection with its motion to dismiss filed with the panel (JA 214), and was fully briefed by counsel for Bishop, Hamant,  and Scanlon in their briefs submitted to the panel (JA 244, 253).  The arbitration panel denied the motion to dismiss (JA 353). [Bold type added.]

In his final opinion, Judge Payne states (JA 405) that "the only evidence provided to the panel as to damages were the Defendants'… "damage exhibits (JA 324, 336, 343).  However, Bishop, Hamant, and Scanlon also testified at the arbitration hearings and were cross-examined as well (JA 375).

In this connection, Judge Payne states that "Examination of the panel's reasoning, such as it is, suggests that some of the award may have been intended to compensate  for damages allegedly suffered by the Defendants because of the termination of their employment." (JA 401). However, Judge Payne continues, the way he reads their agreements stating that Bishop, Hamant, and Scanlon would not suffer significant damages in light of the termination of their agreements, precludes

19

them from getting damages.  Again, the District Court is interpreting the

agreements for Bishop, Hamant, and Scanlon, and is not interested in NASD rules

regardless the provisions in the agreements providing the applicability of NASD

rules subject to the interpretation of the arbitrators, not the District Court.

Judge Payne had this case in his court for some twenty months.  He issued

two memorandum opinions, totaling 55 pages.  This alone  shows his substantial

doubt with respect to his authority under Supreme Court and Fourth Circuit

precedent  to vacate the award of the arbitration panel.  Even in his final

memorandum opinion, Judge Payne states that "Like the original award, the letters

of clarification are not really very clear at all respecting the legal basis for the

finding of liability." Yet, in the same vein, Judge Payne states it is apparent that the

arbitrators found there was a wrongful termination of employment, and that

Bishop, Hamant, and Scanlon's claims were for losses of their benefits of the

employment (JA 122).  In this connection, Judge Payne further states that "it is not

in dispute that the NASD arbitration panel derived its authority over this case from

**the Rules of the NASD**. Under NASD Rule 10101, any dispute 'arising out of the

employment or termination of employment of associated person(s) with any

member' is subject to arbitration by the NASD" (JA 395). [Bold type added.]

In <u>Remmey vs. Paine Webber, Inc.</u>, 32F.3d.143, 151(4th Cir.1994), cert.

den., 513 U.S. 112(1995), the Fourth Circuit States:

There is no doubt that the arbitrators in this case were presented with evidence that could have supported an award in favor of either of the parties….**It is not our function as a reviewing Court, however, to revisit the arguments and evidence presented to the arbitrators.** Rather, our role is limited to determining whether the arbitration process itself was flawed." [Bold type added.]

At 32 F.3d 146 in <u>Remmey</u> the Fourth Circuit accordingly states: "Thus, in reviewing arbitral awards, a district or appellate court is limited to determining 'whether the arbitrators did the job they were told to do -- **not whether they did it well, or correctly, or reasonably, but simply whether they did it'".** [Bold type added.]

In <u>Three S Delaware v. DataQuick</u>, 492 F. 3d 520, 531 – 532 (4th Cir. 2007), it is stated:

In evaluating whether an arbitrator has exceeded his power, we have generally recognized that **"any doubts concerning the scope of arbitrators' issues as well as any doubts concerning the scope of the arbitrators' remedial authority are to be resolved in favor of the arbitrators' authority as a matter of federal law and policy."** *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 991 F.2d 141, 147 (4th Cir. 1993) (internal quotation marks omitted). [Bold type added]

There is no rule of law under the FAA that if an arbitrator states some reasons for his decision, this opens the floodgates to convert a District Court into

an appellate review court, particularly when the Fourth Circuit Court and Supreme

Court say not so.

In <u>Steelworkers v. Enterprise Corp.,</u> 363 U.S. 593, 596 (1960), a non-FAA

case, the Supreme Court states equally applicable guidelines: "The refusal of

courts to review the merits of an arbitration award is the proper approach to

arbitration under collective bargaining agreements.  **The federal policy of settling**

**labor disputes by arbitration would be undermined if courts had the final say**

**on the merits of the awards."** [Bold type added.]

The Supreme Court in <u>Enterprise</u> further states at p. 598:

> **"A mere ambiguity** in the opinion accompanying
> an award, which permits the inference that the
> arbitrator may have exceeded his authority, **is not**
> **a reason for refusing to enforce the award.**
> Arbitrators have no obligation to the court to give
> their reasons for an award.  **To require opinions**
> **free of ambiguity may lead arbitrators to play it**
> **safe by writing no supporting opinions."**  This
> would be undesirable for a well-reasoned opinion
> tends to engender confidence in the integrity of the
> process and aids in clarifying the underlying
> agreement.  Moreover, we see no reason to assume
> that this arbitrator has abused the trust the parties
> confided in him and has not stayed within the areas
> marked out for his consideration.  It is not apparent
> that he went beyond the submission.  The Court of
> Appeals' opinion refusing to enforce the
> reinstatement and partial back pay potions of the
> award was not based upon any finding that the
> arbitrator did not premise his award on his
> construction of the contract.  It merely disagreed

with the arbitrator's construction of it. [Bold type added.]

The Supreme Court in <u>Enterprise</u> notes **a similar argument in the case at bar** at pp. 598, 599:

> "Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the collective bargaining agreement it can be determined that the agreement did not so provide, and that therefore the arbitrator's decision was not based upon the contract. **The acceptance of this view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final.** This underlines the fundamental error which we have alluded to in *United Steelworkers of America v. American Manufacturing Co., ante,* p. 564, decided this day. As we there emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. **It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."** [Bold type added.]

A leading Fourth Circuit FAA decision, <u>Miller v. Prudential Bache Sec., Inc.</u>, 884 F.2d 128, 130 (4th Cir. 1989), <u>cert. denied</u>, 497 U.S. 1004 (1990), declared categorically that "contract misconstruction is an insufficient basis for

23

vacating an arbitration award." This Court explained the strength and

steadfastness of the federal courts' commitment to this rule under the Federal

Arbitration Act as follows (884 F.2d at 130):

> Over three decades ago, the Supreme Court held that a contention that "the arbitrators misconstrued a contract is not open to judicial review" under § 10(d) of the Federal Arbitration Act. *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 203 n. 4, 76 S.Ct. 273, 276 n. 4, 100 L.Ed. 199, 205 n. 4 (1956). The federal courts, including this one, have unwaveringly followed this rule, and have consistently held that contract misconstruction is an insufficient basis for vacating an arbitration award. *See, e.g., National R.R. Passenger Corp. v. Chesapeake & Ohio Ry. Co.,* 551 F.2d 136, 142 (7th Cir. 1977) (arbitrators do not exceed their powers by misconstruing a contract, even if their interpretation is, in the eyes of the reviewing court, clearly erroneous. *Textile Workers Union of America v. American Thread Co.,* 291 F.2d 894, 896 (4th Cir. 1961) (misinterpretation of the contract giving rise to the arbitration will not vitiate the award).

> Although not required under either NASD rules or the Federal Arbitration Act, 9 U.S.C. §1, et seq. to give a written statement explaining their decision, the panel issued the following narrative explanation:

>> Although Respondent did have some apparent reasons to be concerned about circumstances and the relationships between registered representatives in its Richmond, Virginia branch office
>> #67 H **among other factors** leading to this decision, the panel is of the opinion that Respondent engaged in the unauthorized practice of law by employing staff counsel to advise and represent these Claimants in their individual capacities. Having assumed the role and responsibilities of legal counsel in relation to its registered representatives, Respondent is held to the highest ethical obligations and fiduciary duties that would apply to a lawyer and law firm

duly licensed to practice law in the Commonwealth of Virginia and engaged in business dealings with its legal client. This includes a duty to maintain the confidences and secrets of, and to maintain utmost loyalty to protect the interests of, each of these Claimants. In addition, Respondent failed to act in accordance with the **standards of business fairness and good faith required by NASD rules** in not providing these Claimants with notice and warning that they were under a higher level of **supervision** to the extent stated in **Respondent's own policies and procedures** that its registered representatives should be entitled to rely upon, and in not providing the same notice and warning and in not sharing the communications between Respondent and these Claimants' legal counsel, who was also representing Respondent, regarding Respondent's higher level of **supervision** of these Claimants **and its intention to terminate its relationship with these Claimants.** There was possibly also a failure to communicate through and from common legal counsel the nature of separate settlement negotiations in another NASD arbitration. The Panel also believed that in light of the above described high fiduciary duty and ethical obligations, that withdrawal of legal representation during a pending arbitration both prejudiced some or all Claimants' litigation interest and made their transfer to other Raymond James Financial Services, Inc. branch offices impossible as a practical matter. [Bold type added.]

In *Apex Plumbing Supply, Inc. v. U.S. Supply, Inc.,* 142 F.3d 188, 193-194 (4th Cir. 1998), the Fourth Circuit states it has "held that 'as a matter of law' neither misinterpretation of a contract nor an error of law 'constitutes a ground on which an award can be vacated.'" And it also cites Judge Payne's prior decision in the *Farkas* case, 806 F. Supp. 84, 87 (E.D. Va. 1992). The Fourth Circuit goes on to state:

25

> **"Indeed, 'a conclusion reached by the [arbitrator], even if questionable…does not constitute exceeding [his] power.'"**
>
> (Citation omitted).
>
> [Bold type added.]

The Fourth Circuit goes on to state in <u>Apex</u> (142 F.3d 194):

> U.S., not unexpectedly, counters that here more than a mere 'misinterpretation' of the contract has transpired because **the arbitrator's valuation decision irrationally disregarded an unambiguous** provision of the Agreement. Even if we were to accept the premise of U.S.'s assertion, however, no precedent supports vacation on this ground; indeed, U.S. cites none. To the contrary, authority interpreting the FAA has held that **merely because an arbitrator's decision is not based on an agreement's express terms does not mean that it is not properly derived from the agreement;** neither misapplication of principles of contractual interpretation nor erroneous interpretation of the agreement in question constitutes grounds for vacating an award." [Bold type added.]

In <u>Remmey v. Paine Webber, Inc.</u> 32 F.3d 143,149-150 (4th Cir., 1994), cert. den., 513 U.S. 112 (1995), the Fourth Circuit states:

> In making a claim based on **'manifest disregard' [of the law]**, an appellant once again shoulders a heavy burden. We have previously explained that an arbitration panel's interpretation of the law will not be

reversed unless the 'arbitrators understand and correctly **state** the law, but proceed to **disregard** the same....'

Rather, **appellant is required to show that the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision .."** [Bold type added.]

A reading of the December 12, 2006 decision of the arbitration panel and comparing it with its two clarifications shows no abandonment of any prior findings by the panel.

First, the arbitration panel's damage awards were based on defendants' damage exhibits submitted at the arbitration hearing, and their related testimony. Second, under the Fourth Circuit's <u>Apex</u> decision, <u>supra,</u> there being no evident miscalculation of damages on the face of each damage award in the case at bar, the damage awards are final and not subject to court review.

The issues raised by plaintiff were briefed and presented to the arbitration panel. Plaintiff's motion to dismiss was denied by the panel. The issues, across the board, were presented by the parties during the five-day arbitration hearing process.

Contrary to the District Court's expressly stated preference (JA 40, Lines 4-12), the FAA reflects a strong preference for Arbitration. <u>Qorvis Communications, LLC v. Wilson</u>, Fourth Circuit, December 3, 2008. Qorvis cites <u>Apex Plumbing</u>

27

with approval, that "Courts of Appeals do not review the reasons of arbitrators in determining whether their work draws its essence from the contract, but look only to the result reached; the single question is whether the award… is rationally inferable from the contract." Apex Plumbing, 142 F.3d at 193 n.5. Qorvis also cites Apex Plumbing, 142 F.3d 188, 193, "Review of an arbitrator's award is severely circumscribed."

In Hall Street Associates v. Mattel, Inc., 552 U.S. _____, 2008, the Supreme Court states at the outset:  "The Federal Arbitratrion Act (FAA or ACT), 9 U.S.C. §1 et.  seq. provides for **expedited judicial review** to confirm, vacate, or modify arbitration awards." [Bold type added.]

In Westvaco Corporation v. United Paperworkers, 171 F.3d 971, 978 (4th Cir. 1999), it is stated:  "Public policy can easily become a vessel in which judges pour their own subjective preference in derogation of the arbitral process and the contractual commitments of the parties which it represents.  Such overreaching erodes not only the foundation of collective bargaining and arbitration, but the integrity of the judiciary itself."

In the February 24, 2008 issue of Parade Magazine, Justice Sandra Day O'Connor states:  "Thus, our judicial system has safeguards to ensure consistency and preservation of the law.   But it is threatened when judges ignore settled law and make decisions according to personal or public preferences."

## <u>CONCLUSION</u>

This case should be remanded to the District Court with instruction to reinstate and confirm the arbitration award for the three appellants, and to so enter final judgment for them.

*s*_____            *s*_____
Jay J. Levit, Esquire              Scott G. Crowley, Sr.
Law Office of Jay J. Levit         Crowley & Crowley
10132 West Broad Street            1800 Bayberry Court, Suite 102
Glen Allen, VA  23060              Richmond, VA   23226
(804) 270-4600                     (804) 282-5303
Counsel for Appellant Bishop       Counsel for Appellants Hamant
                                   and Scanlon

## **REQUEST FOR ORAL ARGUMENT**

Appellants request oral argument.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief contains 6,954 words, exclusive of the parts of the brief exempted by Fed.R.App.P.32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of F.R.App.P. 32(a)(6) because this brief has been prepared using a proportionally spaced typeface using Word in 14-point Times New Roman font.

March 26, 2009                                     */s/ Jay J. Levit*
                                                  Jay J. Levit

## **CERTIFICATE OF SERVICE**

I, Jay J. Levit, hereby certify that the required copies of the foregoing Opening Brief of Appellant were filed with the Clerk, United States Court of Appeals for the Fourth Circuit via hand delivery and electronically using the Court's CM/ECF System which will send notice of such filing to the following counsel for the Appellee and have mailed a copy to counsel for Appellee with Joint Appendix by being placed in the United States Mail, First Class postage prepaid and properly addressed on this 26th day of March, 2009:

Stephen G. Cochran
Haight, Tramonte, Siciliano, Flask & Yeonas, PC
8221 Old Courthouse Road, Suite 300
Vienna, Virginia 22182

Victor M. Glasberg
Victor M. Glasberg & Associates
121 South Columbus Street
Alexandria, Virginia 22314

*/s/ Jay J. Levit*
Jay J. Levit