UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

Case #09-1038

RAYMOND JAMES FINANCIAL SERVICES,

Appellee,

v.

THOMAS BISHOP, *et al.*

Appellants.

---

Appeal From The United States District Court
For The Eastern District of Virginia

---

---

BRIEF OF APPELLEE RAYMOND JAMES FINANCIAL SERVICES, INC.

---

Stephen G. Cochran, #12956
Haight, Tramonte, Siciliano,
  Yeonas, Roberts & Cochran, P.C.
8221 Old Courthouse Road, #300
Vienna, VA 22182-3839
703-734-4800 / fax:  703-442-9532
scochran@htslaw.com

Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com

Counsel for Appellee

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 09-1038    Caption: Raymond James Financial Svcs v. Thomas Bishop, et al

Pursuant to FRAP 26.1 and Local Rule 26.1,

RJFS, Inc _____ who is Appellee _____, makes the following disclosure:
(name of party/amicus)        (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO
2.  Does party/amicus have any parent corporations?  ☑YES ☐NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
                Raymond James Financial Services, Inc.
3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑ YES ☐NO
    If yes, identify all such owners:
                Raymond James Financial Services, Inc.
4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
****************************

I certify that on this date I served this document on all parties as follows:

Jay J. Levit
10132 West Broad Street
Glen Allen, VA 23060
Counsel for Thomas W. Bishop

Scott Gregory Crowley
7201 Glen Forest Drive, Suite 106
Richmond, VA 23226
Counsel for Steven H. Hamant and Timothy E. Scanlon

_Stephen D. Cochran_        2-6-09
(signature)                (date)

Reset Form

Table of Contents

Corporate Disclosure Statement

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Questions Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      Problems Emerge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      The Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      The First Attempt at Judicial Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      The First Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      The Arbitrators' "Clarification" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      The Second Attempt at Judicial Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      Applicable Standards of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Note on Claimants' Statement of Standards of Review . . . . . . . . . . . . . . . . . . . 22

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I.      The Awards, Not Grounded in and Flatly Irreconcilable
        With the Parties' Written Agreements, Manifest the
        Arbitrators' Exceeding Their Powers Or Imperfectly
        Executing Them, and Were Thus Properly Vacated . . . . . . . . . . . . . 25

II.     The Fact That the Arbitrators Were Aware of the
        Applicable Law, Understood It Correctly, Found it
        Applicable to the Case Before Them, and Yet Chose
        to Ignore it in Propounding Their Decision, Manifests
        Their Exceeding Their Powers Or Imperfectly
        Executing Them, Thus Warranting Vacation of Their Award . . . . . 31

        A.     This Circuit's Authority on "Manifest Disregard"
               Remains Good Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

        B.     Judge Payne Properly Found Manifest Disregard
               Sufficient to Warrant Vacatur Under 9 U.S.C. §10(A)(4) . . . 35

III.    The Alleged Provision of Unethical Legal Representation
        Did Not Implicate Raymond James' "Performance as an
        Employer of Brokers," and Was Not Arbitrable under the
        Rule of *Zandford v. Prudential-Bache Securities*,
        112 F.3d 723 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Table of Authorities

Cases

*Apex Plumbing Supply, Inc. v. U.S. Plumbing Supply, Inc.,*
    142 F.3d 188 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Aspero v. Shearson Am. Express,* 768 F.2d 106 (6th Cir. 1985) . . . . . . . . . . . . 39

*Citigroup Global Markets v. Bacon,*
    No. 07-20670, 2009 WL 542780 (5th Cir. March 5, 2009) . . . . . . . . . . . . 34, 35

*Coffee Beanery, Ltd. v. WW, LLC,* 300 Fed. Appx. 415 (6th Cir. 2008) . . . . . . . . 34

*Comedy Club, Inc. v. Improv West Assocs.,*
    553 F.3d 1277 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Fleck v. E.F. Hutton Group,* 891 F.2d 1047 (2nd Cir. 1989) . . . . . . . . . . . . . . . . 39

*Hall Street Assocs. v. Mattell,* __U.S. __, 128 S.Ct. 1396 (2008)) . . . 31, 32, 34, 35

*Parsons & Whitmore v. Yeargin Const. Co.,Inc.,*
    744 F.2d 1482 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Patten v. Signator Ins. Agency, Inc.,* 441 F.3d 230 (4th Cir. 2006) . . . . . . . . 21, 28

*Ramos-Santiago v. United States,* 524 F.3d 120 (1st Cir. 2008) . . . . . . . . . . . . . 33

*Remmey v. Paine Webber,* 32 F.3d 143 (4th Cir. 1994),
    *cert. denied* 513 U.S. 112 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Richmond, Fredericksburg & Potomac RR. Co. v.*
    *Transp. Commc'ns Int'l Union,* 973 F.2d 276 (4th Cir. 1992) . . . . . . . . . . . . . 30

*Stolt-Nielsen SA v. Animalfeeds Int'l Corp.,*
    548 F.3d 85 (2nd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Three S Delaware v. DataQuick Info. Sys.*,
492 F.3d 520 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 35

*Upshur Coals Corp. v. United Mine Workers of Am.*,
933 F.2d 225 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Zandford v. Prudential-Bache Securities*, 112 F.3d 723 (4th Cir. 1997) . . . 2, 38, 40

<u>Statutes</u>

9 U.S.C.

§10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

§10(4)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

§10(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 30, 33-35, 38, 40

§§10-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

§13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Code of Va.*

§13.1-558 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

<u>Questions Presented for Review</u>

A financial services company closed a branch office staffed by four brokers, each of whom worked as an independent contractor pursuant to agreements that permitted their termination at will and expressly stipulated that none of the parties would be "significantly damaged" by the termination of the agreements. While one broker went to work at another company branch, the other three, feeling aggrieved by the closing of their branch, declined transfer, voluntarily resigned from the company, and, having resigned, submitted claims of wrongful termination to arbitration. Finding that the claimants' employer had engaged in the practice of law (*sic*) and had done so unethically and to the claimants' injury, the arbitrators rendered awards in their favor in excess of $300,000. The district court vacated the awards. The questions presented for review are:

1. Whether the awards, not grounded in and flatly irreconcilable with the parties' written agreements, manifest the arbitrators' exceeding their powers or imperfectly executing them, and were thus properly vacated by the district court under the Federal Arbitration Act ("F.A.A.").

-1-

2.  Whether the fact that the arbitrators were aware of the applicable law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision, manifests the arbitrators' exceeding their powers or imperfectly executing them.

3.  Whether the district court properly vacated the awards since the alleged provision of unethical legal representation did not implicate the employer's "performance as an employer of brokers," and thus fell outside the range of matters arbitrable under the parties' agreement under the rule of *Zandford v. Prudential-Bache Securities*, 112 F.3d 723 (4th Cir. 1997).

## Statement of the Case

On January 12, 2007, appellee Raymond James Financial Services Inc., filed suit in the United States District Court for the Eastern District of Virginia, Richmond, seeking to vacate arbitration awards against it entered by an arbitration panel of the National Association of Securities Dealers.  App. 12-15.  The awards arose out of the claims of wrongful termination brought by three of its former financial advisors, Thomas Bishop, Steven Hamant and Timothy Scanlon ("claimants").

-2-

By memorandum opinion and order dated December 18, 2007, the Hon. Robert E. Payne remanded the case to the arbitrators for clarification of the basis upon which they had awarded of damages. App. 106-28. The arbitrators responded with two letters. One, dated April 11, 2008, explained that Raymond James (whose counsel had provided legal representation to the three claimants on third party claims against them and the company) had fallen afoul of its alleged lawyerly fiduciary obligation to the claimants, whereby the claimants were damaged. App. 362-63. Although the panel had already rendered awards to the claimants, the panel also observed, in its April 11 letter, that the panel members "did not have before them the damage information" and requested that it be provided. *Id.* The panel's June 4, 2008 letter confirmed that "The unauthorized practice of law was one among other factors considered by the panel...," and affirmed its earlier award. App. 365-66.

Having reviewed the panel's two letters, Judge Payne tried to "make the best sense out of the clarification of the award," as required by this court's precedents. App. 391. Twenty pages later, he concluded that this could not be done, notwithstanding the concededly "heavy burden" on one who would overturn an arbitration award. App. 393. He vacated the awards. Claimants appealed.

-3-

Statement of Facts

The Parties

Raymond James is a financial services company (not a law firm). In 2001, claimants entered into separate written agreements with Raymond James to work as independent brokers out of the company's Richmond office.[1] The contractors' agreements were at will and recognized that neither party would be significantly damaged by their peremptory termination:

> Either party may terminate this agreement by providing the other party no less than five (5) business days prior written notice of intent to terminate this agreement. Given the unique transactional nature of the securities business, there is no need for a liquidated damages provision with respect to this agreement should either party voluntarily terminate this agreement as neither party would be significantly damaged by such termination.

App. 274, 282, 290. The agreements contained no arbitration provision. However, as a member of the National Association of Securities Dealers

---

[1]Claimants' representations to the contrary (*e.g.*, brief at 18) notwithstanding, Raymond James has on no occasion characterized claimants as its former employees. They were expressly designated independent contractors in the governing agreements. App. 274, 282, 290 (¶2). In referring to the implications of the doctrine of employment at will, the parties and Judge Payne occasionally referred to claimants' having been "employed" at Raymond James' Richmond office. This shorthand does not change their status as independent contractors, entitled to give and to receive five days' notice of their severance from the company under ¶3 of their agreements.

("NASD"), Raymond James was required to have certain disputes with affiliated brokers arbitrated under NASD rules. App. at 382.

### Problems Emerge

Claimants proved problematical as affiliated brokers. Starting in 2003, claimant Bishop was the subject of numerous complaints from competitors claiming unlawful and unethical practices in his securities work. The charges included improper disclosure of confidential information, forgery, improper distribution of customer profits, embezzlement, fraud, libel and other alleged offenses. Supp. App. 7-8, 30-53. Also in 2003, another competitor filed an arbitration claim against claimants Scanlon and Hamant for defamation, intentional interference, conspiracy and securities rules violations. Supp. App. 7, 32-43. These claims were defended by in-house counsel for Raymond James.[2] The arbitration panel in that case assessed damages against Hamant and Raymond James in the amount of $10,000, jointly and severally, as well as $10,000 against Hamant individually. Supp. App. 41.

---

[2]Brokers could retain their own counsel or avail themselves of the expertise of in-house counsel at a significantly reduced rate. Each time claims were asserted against the claimants, they elected to retain vice-president and counsel, Terrence Bostic. These matters are not disputed.

On March 31, 2004, another competitor filed a claim against claimant Bishop and Raymond James. Raymond James Vice President and Associate Corporate Counsel Terrance Bostic represented both claimant Bishop and the company. In late November, 2004, Raymond James determined, following investigation, that claimant Bishop or one of his colleagues had apparently entered a company computer without authorization, changed the password of one of the branch's co-managers, and gained inappropriate access to certain customer records and other secure data. Supp. App 9. Raymond James notified the Federal Bureau of Investigation of these concerns and considered taking action against claimant Bishop, who was then being defended in the third party claim, together with the company, by its associate corporate counsel. *Id.* In light of the apparent conflict, Raymond James' counsel withdrew from continuing to represent claimant Bishop in the arbitration. *Id.* Because of security concerns reflecting the F.B.I. inquiry and an internal investigation ongoing at Raymond James, counsel did not give claimant Bishop notice of the reasons for his withdrawal as his counsel. Ultimately, Raymond James settled the claim against it by paying $20,000, plus legal fees and costs in excess of $8,000. *Id.* The claim against Bishop was concluded with no liability to Bishop. App. 383.

-6-

On April 27, 2004, having previously been "keeping a watchful eye on this office," App. 305, the company sent notice of closure of the Richmond branch to its two principals, including claimant Bishop, "largely due to the series of complaints which have occurred in your office." App. 302. The company gave each broker, including all three claimants, the opportunity to affiliate with another Raymond James office. App. 308. Mike Finney, claimant Bishop's co-manager of the Richmond branch, did just that, App. 311, but none of the claimants followed suit. App. 383. Instead, they submitted letters of voluntary resignation from Raymond James and accepted employment with a competitor broker/dealer. Supp. App. 54-60.

### The Arbitration

In July 2005, claimants filed a consolidated arbitration demand against Raymond James before the NASD, whereby (as they explain in their brief, at 4) they "contested ... the alleged wrongful closure of their branch and termination of their F[inancial] A[dvisor] agreements...." Their statement of claim (as Judge Payne later noted, App. 384) "made no significant reference to either Hamant or Scanlon, focusing instead almost entirely on Bishop." The statement "sought to characterize Raymond James' conduct as actionable without reference to any

-7-

specific claimant." *Id.* The statement also claimed damages "without articulating any causal linkage between the asserted damages and any specific conduct attributed to Raymond James." *Id.* "In sum," Judge Payne later found,

> the statement of claims is a hodge-podge of conclusory, pejoratively presented factual allegations and rather strange legal theories that seemed to have little, if any, relation to Hamant and Scanlon and that, as to Bishop, focused largely on the alleged abandonment of Bishop by the Raymond James in-house lawyer during the NSC [*sic;* read: NASD] arbitration and on the termination of Bishop's employment with Raymond James.

*Id.*

The difficulties highlighted by the claimants' statement of claim reappeared in the briefs submitted by them to the arbitrators. In Judge Payne's words:

> [The briefs] presented the case principally as one in which claimants contended that they were wrongfully terminated and thereby suffered financial loss. However, the briefs also discussed general, incidental contentions of other perceived wrongs, such as breaches of the Virginia Franchise Law, breaches of unarticulated equitable precepts, and breach of generally asserted fiduciary duties. There was alleged no discernable link between any of those theories and the damage evidence.

App. 385.

The arbitrators' decision amounted to another step in the mounting confusion. Here is the arbitrators's own "Case Summary" set forth in their award:

-8-

Claimants asserted the following causes of action: breach of fiduciary and legal duties; violation of just and equitable legal principles of trade; breach of promises and inducements; interference with, and unlawful termination of, claimants' prospective economic advantages; interference with the performance of contractual promises and inducements; tortious and deceitful termination of claimants' legitimate and high business expectations; violations of statutory Virginia public policy set forth in Virginia Code §13.1-558;[3] and, common law and statutory conspiracy.

App. 353.  However uncertain the causes of action which the arbitrators deemed themselves to be adjudicating may have been – and against whom – one thing was uncontested:  in the arbitrators' words, "*The causes of action relate to the termination of claimants' employment with respondent.*"  *Id.* (Emphasis added.)

On these claims "relating to" the claimants' allegedly unjust termination, the panel awarded damages as follows:

*      To claimant Bishop, $156,050

*      To claimant Hamant, $74,050

*      To claimant Scanlon, $72,050

App. 354.

---

[3]This code section recognizes it as the policy of the Commonwealth of Virginia to eradicate inequities in all aspects of the franchise system.  The franchise claim, whatever it was, was denied by the arbitrators along with three other claims.  App. 388-89.

To explain its award, the panel afforded a single paragraph, generously characterized by Judge Payne as a "garbled" "conflation of claims and claimants." App. 113. It begins thus:

> Although [Raymond James] did have some apparent reasons to be concerned about circumstances and the relationships between the registered representatives in its Richmond Virginia branch office #67, among other factors leading to this decision, the panel is of the opinion that [Raymond James] engaged in the unauthorized practice of law by employing staff counsel to advise and represent these claimants in their individual capacities. Having assumed the role and responsibilities of legal counsel in relation to its registered representatives, [Raymond James] is held to the highest ethical obligations and fiduciary duties that would apply to a lawyer and law firm duly licensed to practice law in the Commonwealth of Virginia and engaged in business dealings with its legal client.

App. 354. The panel also found that Raymond James failed to act "in accordance with the standards of business fairness and good faith required by NASD rules" by not having informed the claimants that they were under heightened supervision. *Id.* "In light of the above-described high fiduciary duty and ethical obligations," the panel concluded, "withdrawal of legal representation during a pending arbitration both prejudiced some or all claimants' litigation interests and made their transfer to other Raymond James ... offices impossible as a practical matter." *Id.*

-10-

The panel also ruled that "any and all claims not specifically addressed herein, including claimants' requests for punitive damages, are denied." *Id.* Claimants did not appeal this denial, which dismissed their claims of breach of promise and inducements, interference with performance of contractual promises, violation of public policy under *Code of Va.* §13.1-558 and statutory and common law conspiracy. App. 389.

### The First Attempt at Judicial Review

On July 27, 2007, the matter came on for a hearing before Judge Payne on the motion of Raymond James to vacate the award, and the motions of claimants Bishop, Hamant and Scanlon to confirm it. Claimants' counsel made clear their contention that the award was for claimants' allegedly wrongful termination as Raymond James employees:

> [W]e're alleging, judge, that the arbitrators were right within their law and within the scope of the authority that they have under the NASD rules and under which these parties consented to, the arbitrators had the right to find that Raymond James had wrongfully terminated my clients [Scanlon and Hamant].

App. 45, *see also* App. 46. This did not sit well with Judge Payne, who inquired: "Now, tell me how you take a provision that on its face provides for termination at will and convert[] it into a termination for cause provision. How does that

-11-

happen?" App. 50. Counsel conceded that he had remitted no evidence to support his contention. *Id., see also* App. 54.

Counsel for claimant Bishop clarified further that claimants' claim was predicated on the closing of the Richmond Raymond James office – a necessary position lest claimants' claims fail, given their voluntary resignations following closure of the Richmond office to commence work with a competitor (Supp. App. 54-60):

> The Court: Wait a minute, now. You're saying the offense here for which the award was made was termination of the office, is that what you're saying, and that's what your complaint was about?
>
> Mr. Levit: And the termination of these people with the termination of the office. Certainly.
>
> The Court: Is it your view that that's what was arbitrated, whether the decision to terminate the office was wrong, to close that office? Is that what you're saying?
>
> Mr. Levit: That was before the arbitrators.

App. 86-87.

Claimants were keen, however, to circumscribe as narrowly as possible the scope of the court's review of the decision they had won:

> The Court: Do you agree that a district court can look at the claims made in the arbitration and compare them to the decision, as part of its effort to ascertain whether the arbitrators exceeded their powers or imperfectly executed them?

-12-

Mr. Levit:  No, the district court should not do that,

The court:  Should not do that.

Mr. Levit:  Should not do that.  Cannot do that.

App. 75-76.  This is consistent with claimants' position taken on this appeal, to  the

effect that "arbitration awards under the F[ederal] A[rbitration] A[ct] are final and

binding, not subject to legal and factual review by a district or circuit court."  Brief

at 1.

Judge Payne did what he could to salvage the award if this might be done

without violence to law or the English language.  Judge  Payne found "highly

dubious" the notion that Raymond James had engaged in the practice of law merely

by allowing an in-house lawyer to represent an employee in an NASD arbitration.

App. 115.  He reached a similar conclusion with regard to the apparent claims

predicated on Raymond James' "highest ethical obligations and fiduciary duties"

relative to the claimants.  *Id.*  More broadly, Judge Payne determined that it was

"not possible to ascertain which of [claimants'] claims the award actually intended

to use as the predicate for liability or as the basis for the compensatory damages

award."  App. 122.  Considering the statement of claims and evidence of loss of

benefits alleged to derive from loss of employment alone, "it seems," Judge Payne

observed, "that the reason for the award is wrongful termination"  *Id.*  But,

-13-

"[a]nother asserted basis for liability could be the perceived breach of fiduciary duties." *Id.* And this was apart from the fact that "judicial review as to the claims of Hamant and Scanlon might involve considerably different factors than would review of Bishop's claim." *Id.*

Judge Payne summarized his dilemma as follows:

> [T]he arbitrators in this case issued a written decision with an explanation of reasons for the award they entered. The explanation of reasons is so confusing and difficult to understand, particularly when viewed in perspective of the statement of claims and the issues, as framed by the text of the award, and as explained by the explanation of reasons given for the award, that it is impossible to conduct meaningful judicial review. Under certain circumstances, the award might be appropriately affirmed. Under other circumstances, the award may exceed the power of the arbitrator because of a disregard of a contractual provision controlling the rights and remedies available to the parties. The court needs to understand the basis for the decision made by the arbitrators as to each of the three claimants before it is possible to conduct meaningful judicial review.

App. 126-27.[4]

Judge Payne thus remanded the matter to the panel for clarification. App. 128.

---

[4]Claimants insist, brief at 11, that Judge Payne determined, at this stage, "that the arbitration panel found [claimants] were wrongfully terminated, later changing his mind." While the judge's opinion speaks for itself and nullifies this contention, so too do his comments at the hearing: "Now, it looks to me that the panel didn't rule on the termination issue. What it did, it ruled on other claims.... *** They said that you engaged in the unauthorized practice of law, and that's ridiculous." App. 31.

The First Appeal

Claimants appealed from Judge Payne's decision remanding the case to the arbitrators for clarification of their decision. Conceding that in unusual cases a court might remand an arbitration award for clarification, claimants argued – of particular consequence here – that "there is nothing of significance to be 'clarified.'"

> The case at bar, conversely, presents a straightforward claim for employment termination with facts that are anything but extraordinary or unique. *The entire issue was whether there existed just cause to terminate the [claimants'] employment.*

Appellants' Response to Appellee's Notice of Supplemental Authority, *Bishop v. Raymond James Financial Services, Inc.*, docket #22, #08-1056 (4th Cir., filed March 17, 2008)(emphasis added). On April 2, 2008, this court summarily dismissed the appeal as unappealable.[5]


The Arbitrators' "Clarification"

Apart from claimants' categorical confirmation that the "entire issue" before the arbitrators was "whether there existed just cause to terminate the appellants'

---

[5]The referenced Appellants' Response, not forming part of the record in the instant case, has not been included in the appendix. The court can take judicial notice of this filing. This court's order dismissing the appeal as interlocutory appears as App. 129-31.

employment," *id.,* the principal significance of the history recited above lies in its abortive result. Given a second chance to explain and support their findings and awards, and expressly on notice of the district court's clearly articulated concerns set forth both orally to counsel and in its written opinion, the arbitrators proceeded to make things even muddier than they had been before. By letter dated April 11, 2008, the arbitrators confirmed "the position of the panel that if a corporation employs a lawyer to provide legal services[,] that corporation is then engaged in the practice of law." App. 363. They also took the occasion to note, *id.*, that when they had handed down their prior awards exceeding $300,000, they "did not have before them the damage information" – which they now took the opportunity to request notwithstanding that the arbitration record had long since been closed. By letter dated June 4, 2008, the arbitrators confirmed their prior award, based on the same ground. App. 365. Judge Payne's request for clarification went wholly unanswered in substance. Nor did the arbitrators' clarification, focusing on breach of fiduciary and legal duties, address the theory of unjust termination uniquely propounded by claimants as the "entire issue" in the case. The award as explained by the arbitrators, and the basis for the awards asserted by the claimants – below and here – passed like ships in the night.

-16-

The Second Attempt at Judicial Review

The matter returned to Judge Payne with the arbitrators' two letters now supplementing their original award. Faced with these putative clarifications, and in light of the difficulties he still perceived in construing the claims and awards, in a telephone hearing Judge Payne ordered separate briefing on the awards to be filed by claimant Bishop and by claimants Hamant and Scanlon, cautioning that "what applies to one won't apply necessarily to the other." App. 143. The judge instructed counsel to avoid the "mishmash and commingled nonsense that was in the previous briefs." *Id.*

In due course, Judge Payne had before him the letters of clarification and the parties' supplemental briefs. His understated assessment of the letters was that "Like the original award, the letters of clarification are not really very clear at all respecting the legal basis for the finding of liability. Nor do they articulate a causal link between the perceived liability and the monetary award." App. 391; *see also* App. 385. Again noting, however, his obligation to make sense of the award if this could be fairly done, given the well-established "preference for limited judicial review of arbitration awards in order to encourage the use of arbitration as an alternative to judicial resolution of disputes," App. 393, Judge Payne proceeded to analyze the now re-explicated decision to see whether and, if so, how, it stood up

-17-

to the claims of Raymond James that the arbitrators had exceeded and imperfectly exercised their authority.  App. 394.

The first task facing Judge Payne was to establish on what theory of recovery the claimants had prevailed.  This was not easy.  In light of the repeated contentions of claimants and their counsel to the effect that the "entire issue" was whether they had been unjustly terminated, Appellants' Response, cited *supra* at 12, Judge Payne observed that at least "some of the award may have been intended to compensate for damages suffered by the [claimants] because of the termination of their employment."  App. 401.  But it was plain that the alleged wrongful termination of claimants' status as independent contractors working for Raymond James could not support the award, given the express at-will provisions of the governing agreements precluding such awards.[6]  Finding the award subject to vacation on this ground alone, App. 401, Judge Payne turned next to the justification expressly provided by the arbitrators in their letters of clarification:

_____

[6]This is without reference to the fact that all Raymond James terminated was the existence of the Richmond branch.  Unlike their fourth colleague there, claimants thereafter submitted voluntary letters of resignation from the company rather than seeking positions in other branches.  Supp. App.  54-60.

> Having assumed the role and responsibilities of legal counsel in
> relation to its registered representatives, [Raymond James] is held to
> the highest ethical obligations and fiduciary duties that would apply to
> a lawyer and law firm duly licensed to practice law in the
> Commonwealth of Virginia and engaged in business dealings with its
> legal client.

App. 354.

There were a myriad problems with such justification of the award. First,

"the only evidence provided to the panel as to damages ... detail[s] losses to

[claimants] which purportedly occurred as a result of their termination of their

employment, not as to the consequence of the breach of any fiduciary duty." App.

405. Nor had claimants Hamant and Scanlon presented any claim relative to

breach of legal duties giving rise to damages, as only claimant Bishop contended

that legal representation had been improperly withdrawn from him by Raymond

James. App. 384, 406.[7] Beyond these evidentiary embarrassments lay a more

fundamental problem: the predicate proposition that Raymond James – a securities

firm, not a law firm – practiced law and breached its resulting obligations to the

three claimant/clients in a manner giving rise to damages. Judge Payne found that

this contention "has no discernable basis in law," App. 403, amounting to

---

[7]As Judge Payne stated in court: "Now how on earth you can draw from the
fact that Bostic didn't do right by Bishop that Hamant and Scanlon have been
damaged by anybody is beyond me." App. 38; *see also* App 39-40.

"nothing more than the panel members' personal views of right and wrong," App. 404, and reflecting the panel's failure to apply "the legal standards of causation and damages" where these were known and known to be applicable to the case. App. 411.[8]

In the end, Judge Payne found:

* that "the arbitrators did not have the authority to decide the 'cause of action' upon which they premised their award against Raymond James," App. 400,

* that "the source for the panel's award was not the agreement between the parties or the law governing the agreement, but was, instead, the personal views of the arbitrators," App. 406-07, and

* that "the arbitration panel demonstrated manifest disregard for the law in its handling of the issues of damages caused by Raymond James' breach of its supposed fiduciary duty to the defendants." App. 411.

For each of these reasons independently, Judge Payne held that the award had to be vacated.

This appeal followed.

---

[8]Judge Payne found that the record "reveals no harm caused to the [claimants] on the basis of any of Raymond James' actions, whether or not Raymond James had a fiduciary duty to [claimants]. App. 409.

<u>Applicable Standards of Review</u>

The judgment of a district court on an arbitration award has "the same force and effect, in all respects, as, and [is] subject to all the provisions of law relating to, a judgment in an action." 9 U.S.C. §13.

> Although a district court enforcing an arbitration award does not engage in a *de novo* review of the award, and it may reverse or modify the award only on specified grounds, 9 U.S.C. §§10-11, once the court enters its judgment, it has the same effect as any other judgment recovered following a civil trial.

*Parsons & Whitmore v. Yeargin Const. Co.,Inc.,* 744 F.2d 1482, 1484 (11th Cir. 1984) (internal citation omitted), *cited in Apex Plumbing Supply, Inc. v. U.S. Plumbing Supply, Inc.,* 142 F.3d 188, 193 n.4 (4th Cir. 1998). This court thus reviews the decision of the district court for clearly erroneous findings of fact and mistakes of law relative to the district court's implementation of the federal judicial mandate to afford arbitration decisions "great deference," *Patten v. Signator Ins. Agency, Inc.,* 441 F.3d 230, 235 (4th Cir. 2006). The district court was bound to uphold the award unless the arbitrators exceeded their powers or imperfectly executed them to the point that a proper award upon the subject matter submitted was not made. 9 U.S.C. §10(a)(4).

-21-

Note on Claimants' Statement of Standards of Review

Claimants' position on this appeal is that under

> established precedent in the Fourth Circuit and in the
> Supreme Court, ... arbitration awards under the FAA are
> final and binding, not subject to legal and factual review
> by a district or circuit court.

Brief at 1. Accordingly, in their statement of the applicable standards of review,

brief at 14, while broadly referencing the settled judicial deference to arbitration

decisions, claimants do not focus on the role of this court in reviewing the district

court's decision below. This omission reflects claimants' virtual negation of any

role for the judiciary in upholding the law as established by the Federal Arbitration

Act. It aptly reflects as well claimants' failure to identify and sufficiently

challenge Judge Payne's numerous factual findings, mixed findings of fact and

law, and legal conclusions to which they object wholesale. Rather, invoking

arbitration as a talisman precluding judicial inquiry, claimants cite case law stating

uncontested truisms about judicial deference to arbitrators. Yet claimants are

before a United States court of appeals, seeking to overturn the decision of a

district judge rendered under law which this court must enforce. Before this court,

claimants must demonstrate clear factual error or errors of law supporting their

challenge to the rulings of the court below – not simply appeal to the deference

concededly to be afforded the decisions of arbitrators. This is particularly

-22-

consequential in light of Judge Payne's full awareness, stated on the record, of the circumscribed nature of his review, App. 393, and his dogged effort properly to square that circumscribed review with his judicial obligations to assure compliance with the Federal Arbitration Act.

## Summary of Argument

The claimants demanded arbitration for wrongful discharge notwithstanding that they were working pursuant to a written brokers' agreement which provided for their retention at will and which expressly stipulated that their independent contractors' relationship with Raymond James could be terminated by either party and without meaningful damage to either party, and notwithstanding that they voluntarily resigned from the company rather than seeking a new placement following the closure of the Richmond office. Notwithstanding the untenability of this demand for damages, the arbitrators saw fit to award claimants more than $300,000. This they accomplished on an astonishing and baseless finding that Raymond James had commenced practicing law when it permitted the claimants to be represented by the company's counsel in claims brought by third parties, and that the claimants were somehow victimized, in unstated fashion, by the manner in which such representation was carried out. This lawless award was handed down,

-23-

furthermore, notwithstanding that there was no evidence linking the alleged ethical and legal breaches to damages allegedly suffered by the claimants, and notwithstanding the disconnect between the novel theory of recovery utilized by the arbitrators and the wrongful termination claim pressed by the claimants. Faced with the district court's request for clarification of their decision, the arbitrators made a bad situation worse by confirming their prior decision, clarifying nothing, and, for good measure, observing that at the time they rendered their award, they had not had the requisite damages information.

There is no doubt of the heavy burden on one who would set aside an arbitration award. But it is difficult to conceive of how one could ever be set aside if the award at bar were not: an award (1) flying in the face of the express terms of the mutual at-will agreement governing the parties' professional relationship under review, and the claimants' voluntary resignations, (2) arising from the arbitrators' invention of non-existent lawyer-client relationships between Raymond James and its brokers as the basis for damages, and (3) wholly ignoring the fundamental requirement of a causal nexus between an alleged wrong and alleged damages. The award hereunder review exemplifies arbitrators' exceeding or imperfectly executing their powers, and the district court properly vacated the award on grounds cognizable under 9 U.S.C. §10(a)(4).

-24-

<u>Argument</u>

I.    The Awards, Not Grounded in and Flatly Irreconcilable
      With the Parties' Written Agreements, Manifest the
      Arbitrators' Exceeding Their Powers Or Imperfectly
      <u>Executing Them, and Were Thus Properly Vacated</u>

The following material facts are not disputed:

*    Claimants worked for Raymond James under an agreement which

     stated, in pertinent part:

     Either party may terminate this agreement by providing
     the other party no less than five (5) business days prior
     written notice of intent to terminate this agreement.
     Given the unique transactional nature of the securities
     business,  there is no need for a liquidated damages
     provision with respect to this agreement should either
     party voluntarily terminate this agreement as neither
     party would be significantly damaged by such
     termination.

App. 274, 282, 290.

*    Each claimant submitted a written letter of voluntary resignation from

     Raymond James rather than seeking a new placement with the

     company following the closure of the Richmond branch, as did their

     fourth colleague.  Supp. App. 54-60.

*    Claimants' claim presented for arbitration below was for wrongful

     termination.  The arbitrators so characterized it ("The causes of action

     relate to the termination of claimants' employment with [Raymond

-25-

James]"), App. 353, and the claimants did so as well on oral argument below, App. 45, 86, in their interlocutory appeal (*see* discussion *supra* at 11) and now on the instant appeal ("the [arbitration] panel sustained claims of [the claimants] which the panel expressly recognized as arising out of their termination of employment." Brief at 2.)

Whatever else may be said about the arbitrators' award – and a great deal remains to be said – this much is ineluctable: no award could be predicated on claimants' termination arising from the closure of their office: the conceded foundation of all their claims, however denominated by them or the arbitrators. Such an award would not only not be grounded on the parties' agreement; it would be diametrically at odds with that agreement. Leaving aside the difference between having to contend with a closed office and getting fired, no amount of lawyerly scholasticism can avoid this conclusion, any more than counsel could come up with a cogent response to Judge Payne's rhetorical question below: "Now, tell me how you take a provision that on its face provides for termination at will and convert[] it into a termination for cause provision. How does that happen?" App. 50.[9]

_____

[9]Counsel's response to Judge Payne, *id.,* had reference to case law arising out of agreements lacking the dispositive express at-will severance provisions present here. On appeal, claimants see fit obliquely to hint at this authority (brief

The point comes into stark relief by comparing the tenure and separation provision of the agreements (¶3, App. 274, 282, 290) with the remainder of the documents. The agreements contain a host of provisions, bearing upon claimants' work as brokers, which could properly give rise to arbitration in the event of a breach. And upon proof of breach, the prevailing party would be eligible to receive all manner of remedies available at law or in equity. App. 278, 286, ¶17(a); App. 296 ¶22(a). The express language of the agreements demonstrate, however, that these provisions do not extend to the provision regarding tenure and separation.[10] Paragraph 3 of the agreements not only expressly nullifies a "for cause" termination claim by permitting termination simply on five days' notice by either side; it expressly nullifies, as well, the availability of damages for

---

at 5, ¶8) as though it were consequential, without, however, presenting or arguing it to this court, which is understandable since it is so manifestly inapposite, and the contention was demolished by the court below. App. 57-60.

[10]There is likely one exception, in the event a dispute arose over whether five days' notice of termination had been given. *See* App. 274, 282, 290, ¶3(a). The arbitrable issue would be whether the requisite notice had been given. This is not at issue in the instant case.

termination, notwithstanding that the agreement makes damages available to a person aggrieved by a breach of any other provision of the brokers' agreement.

The arbitrators were vested with plenary authority to decide contested matters arising under the parties' underlying agreement. But they had no authority to decide matters expressly recognized by the parties, in the very agreement at issue, as being outside the scope of a potential (and thus arbitrable) dispute. The arbitrators lacked power to arrogate to themselves the right to determine – much less award damages on – such a dispute. Arbitration is a means of settling disputes arising out of a contract between the parties, not a vehicle for identifying and adjudicating claims newly minted in derogation of a governing agreement, on the theory that arbitrators are free to do whatever they wish. "When the arbitrator ignores the unambiguous language chosen by the parties, the arbitrator simply fails to do his job." *Patten v. Signator Ins. Agency, Inc.,* 441 F.3d 230, 236 (4th Cir. 2006). In this case, the arbitrators grossly overstepped their powers, and in so doing, imperfectly executed them as well. "[T]he arbitrator in this instance simply 'amend[ed] or alter[ed] the agreement,' and thus he 'act[ed] without authority.'" *Id.*

There is more, however. For the above analysis applies not only to the "at will" issue discussed above, but, *a fortiori,* to claimants' fundamental contention that they are entitled to damages because Raymond James made a business

-28-

decision to close the office where they worked, necessarily costing them their jobs there.[11] This is so not merely because nothing in their brokers' agreements bound Raymond James to retain them in Richmond (nor have claimants ever so claimed). It is so not merely because claimants declined an offer of new placement in another Raymond James branch – an offer which their fourth Richmond branch colleague took – and went to work for a competitor. App. 311; Supp. App. 54-60. It is so because it constitutes a untenable usurpation of power for the arbitrators to have arrogated to themselves the right to determine that this company could not lawfully close one of its offices as a matter of its own business judgment.

Claimants' counsel was compelled by the logic of their argument to challenge Raymond James' closure decision, lest claimants' termination claims fail in light of the fact that they voluntarily resigned following closure of their office (Supp. App. 54-60):

_____

[11]The email whereby claimants contend that they were advised of their termination (brief at 3, ¶2) was in actuality a notification by the corporation's First Vice President to the two principals of the Richmond office (including claimant Bishop) that the office would be closed. App. 302. It was neither addressed nor copied to claimants Hamant or Scanlon, who presumably learned of it as an administrative fiat from one of their two Richmond principals.

> The Court:  Is it your view that that's what was arbitrated, whether the
> decision to terminate the office was wrong, to close that office?
> Is that what you're saying?
>
> Mr. Levit:  That was before the arbitrators.

App. 86-87.  In fact, nothing of the sort could possibly have been before the
arbitrators.  It is, after all, "up to the parties to define the issues submitted."
*Richmond, Fredericksburg & Potomac RR. Co. v. Transp. Commc'ns Int'l Union*,
973 F.2d 276, 279 (4th Cir. 1992).  This was not a WARN Act case or any other
kind of claim remotely capable of supporting intrusion into management
prerogative to organize its business affairs.  The issue of closure of the Richmond
office upon which the claims presented here were ultimately predicated was not
and could not have been "the subject matter submitted" for arbitration in this case.
9 U.S.C. §10(a)(4).

Claimants' blanket appeals to the broad discretion of arbitrators
notwithstanding, an arbitration clause does not open floodgates permitting a party
to dump, by fiat, whatever the party wishes into an arbitrator's lap, and to do so
under the awesome protection of the Federal Arbitration Act.  When such a mis-
step occurs, the judiciary must act.  This is what Judge Payne did here:

[T]here is no manner in which this award can be rationally derived from the agreement. *** [T]he source for the panel's award was not the agreement between the parties or the law governing the agreement, but was, instead, the personal views of the arbitrators.

App. 406-07. This state of affairs mandates, under 9 U.S.C. §10(4)(a), vacation of the award entered below as exceeding or manifesting the imperfect exercise of the arbitrators' authority.

II.    The Fact That the Arbitrators Were Aware of the Applicable Law, Understood It Correctly, Found it Applicable to the Case Before Them, and Yet Chose to Ignore it in Propounding Their Decision, Manifests Their Exceeding Their Powers Or Imperfectly Executing Them, Thus Warranting Vacation of Their Award

A.    This Circuit's Authority on "Manifest Disregard" Remains Good Law

In yet another manner does the arbitrators' award warrant vacation: it is based on their stunning disregard of known and clearly applicable law, sufficient to demonstrate their exceeding or imperfect execution of their powers within the meaning of the Federal Arbitration Act. While (in light of *Hall Street Assocs. v. Mattell*, ___U.S. ___, 128 S.Ct. 1396 (2008)) Judge Payne erroneously categorized his analysis on this point as arising under the common law, the substance of that analysis sets forth a basis for vacatur fully cognizable under the FAA.

Prior to the Supreme Court's decision in *Hall Street Assocs.,* this circuit and

-31-

many others routinely held that a federal court could vacate an arbitration award evidencing "a manifest disregard of the law," characterizing this as a "common law ground[] for vacating such an award" without discussing whether it qualified as well as a ground for vacation under the FAA. *Three S Delaware v. DataQuick Info. Sys.*, 492 F.3d 520, 527 (4th Cir. 2007). To obtain vacatur, one had to show "that the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision." *Id.* at 529.

The Supreme Court's decision in *Hall Street Assocs.,* nullifying non-statutory bases for vacatur, invited the conclusion that "manifest disregard of law," rather than necessarily constituting a novel common law, non-statutory basis for vacation, "merely referred to the [9 U.S.C.] §10 grounds collectively, rather than adding to them. . . . '[M]anifest disregard' may have been shorthand for § 10(a)(3) or § 10(a)(4), the subsections authorizing vacatur when the arbitrators were 'guilty of misconduct' or 'exceeded their powers.'" *Hall Street Assocs.*, 128 S.Ct. at 1404.

This court has not opined on whether or under what circumstances the standards required by *Three S Delaware* can be fairly read to articulate standards for vacating an arbitration award under Sections 10 and 11 of the FAA. Diligent research has revealed no cases questioning or overruling *Three S Delaware* or its

-32-

similar predecessors on this point. Four other circuits have, however, analyzed the fate of their respective "manifest disregard" doctrines, and the decisions of those circuits are instructive here.[12]

In *Stolt-Nielsen SA v. Animalfeeds Int'l Corp.*, 548 F.3d 85, 94 (2nd Cir. 2008), the Second Circuit, following the lead of Supreme Court, held that manifest disregard of law remains a valid ground for vacating arbitration awards, re-conceptualized as a judicial gloss on the grounds for vacatur enumerated in §10 of the FAA. Under this analysis, the manifest disregard doctrine represents a mechanism to enforce the parties' agreement to arbitrate:

> Parties do not agree in advance to submit to arbitration that is carried out in manifest disregard of the law. Put another way, the arbitrators have thereby "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

*Id.* at 95 (quoting 9 U.S.C. § 10(a)(4)). Likewise, in *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009), the Ninth Circuit held:

> the manifest disregard ground for vacatur is shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4), which states

---

[12] In a footnote devoid of analysis, the First Circuit has stated, in dictum, that after *Hall Street Assocs.* manifest disregard of the law is not an independent ground for vacating an arbitration award. *Ramos-Santiago v. United States*, 524 F.3d 120, 124 n.3 (1st Cir. 2008). This truism sheds no light on the issue at bar: whether and when the facts giving rise to a finding of manifest disregard may constitute exceeding or imperfect execution of powers, or misconduct, by an arbitrator.

-33-

> that the court may vacate 'where the arbitrators exceeded their powers.' . . . After *Hall Street Associates*, manifest disregard of the law remains a valid ground for vacatur because it is a part of [9 U.S.C.] §10(a)(4).

In *Coffee Beanery, Ltd. v. WW, LLC*, 300 Fed. Appx. 415, 419 (6th Cir. 2008), the Sixth Circuit decided that the holding of *Hall Street Assocs.* must be restricted to the facts of that case. "In light of the Supreme Court's hesitation to reject the 'manifest disregard' doctrine in all circumstances," the court held, "we believe it would be imprudent to cease employing such a universally recognized principle. Accordingly, this Court will follow its well-established precedent here and continue to employ the 'manifest disregard' standard." *Id.*

The Fifth Circuit's decision in *Citigroup Global Markets v. Bacon*, No. 07-20670, 2009 WL 542780, at *1 (5th Cir. March 5, 2009), suggests the flexibility which courts are extending the decision in *Hall Street Assocs.* In *Citigroup*, the court held, necessarily, that after *Hall Street Assocs.* manifest disregard "is no longer an independent ground for vacating arbitration awards under the FAA," and declared that "the term itself, as a term of legal art," was henceforth no longer to be used. *Id.* at *9. Having said that, the court acknowledged that the Second Circuit's decision in *Stolt-Nielsen, supra*, simply to "fold[] manifest disregard into [9 U.S.C.] § 10(a)(4) *** is not inconsistent with *Hall Street*[.]" *Bacon* at *8. The *Bacon* court acknowledged that when an arbitrator "is fully aware of the controlling

-34-

principle of law and yet does not apply it, he flouts the law in such a manner as to exceed the powers bestowed upon him" – precisely the ground for vacatur identified in 9 U.S.C. § 10(a)(4). *Id.* at *8.

Even under the Fifth Circuit's most restrictive interpretation of *Hall Street Assocs.*, therefore, the substantive standard outlined by this court in *Three S Delaware* survives. In this circuit, vacatur lies where "the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision." *Remmey v. Paine Webber*, 32 F.3d 143, 149 (4th Cir. 1994), *cert. denied* 513 U.S. 112 (1995). *See also Three S Delaware*, 492 F.3d at 529. When an arbitrator flouts the law in this way, he exceeds the powers bestowed upon him to decide the matter based upon law and not "his own personal notions of right and wrong." *Upshur Coals Corp. v. United Mine Workers of Am.*, 933 F.2d 225, 229 (4th Cir. 1991).

B. Judge Payne Properly Found Manifest Disregard
   Sufficient to Warrant Vacatur Under 9 U.S.C. §10(A)(4)

The problem noted above is exactly what Judge Payne found had occurred here, App. 400, and the fact that he grounded his analysis in the common law does not nullify this ineluctable fact. Thus, Judge Payne correctly found that:

> \*        Under Florida law, which applied to the contracts at issue, in

-35-

order for a person to recover for breach of fiduciary duty the claimant must have suffered damage caused by that breach, App. 408;

* Raymond James correctly informed the panel of this principle in its brief, which the arbitrators read, *id.*; App. 228-29;

* The arbitrators, who were licensed attorneys, themselves acknowledged that the principles of causation and the necessity of demonstrating damages applied, App. 408;

* "Despite knowing, understanding, and finding applicable the law concerning damages from a breach of fiduciary duty, the arbitration panel failed to apply it." App. 409.

Judge Payne found, in addition, that:

* The only evidence of damages submitted to the panel concerned damages allegedly caused by the claimed unjust termination, *id.;*

* Nothing in claimants' statement of claims "or in any document filed by [claimants]" established any damages caused by a breach of fiduciary duty; indeed, "the record reveals no harm caused to [claimants] on the basis of any of Raymond James actions, whether or not Raymond James had a fiduciary duty to

-36-

the [claimants]," *id.*; and – for good measure –

* There was no evidence that claimants were damaged by not having been notified that their office had been placed under heightened supervision. App. 410, 411.

On the fiduciary duty claims upon which they rendered their award, then, the arbitrators "failed to apply the legal standards of causation and damages, despite knowing that these principles applied and after having stated that they should be applied." App. 411. And on this appeal, claimants have failed to challenge Judge Payne's finding of no causal nexus between the alleged fiduciary defaults of Raymond James and any of the damages awarded – which damages were repeatedly claimed, in any event, to flow from the termination of their employment alone, not from fiduciary or legal defaults. In sum, "even if it could be said that there is a legal basis for the imposition of liability, there was no proof that the [claimants] suffered any damages as a consequence thereof." App. 407. Judge Payne's ruling that the award should be vacated for this reason as well should be affirmed.[13]

_____

[13]The only reason these grounds are not available to vacate the award of unjust termination damages as well is that, since they ultimately focused on the fiduciary issue, the arbitrators did not actually articulate the self-evident principle that one cannot predicate damages for unjust termination on an at-will contract.

III.    The Alleged Provision of Unethical Legal Representation Did Not
        Implicate Raymond James' "Performance as an Employer of
        Brokers," and Was Not Arbitrable under the Rule of *Zandford v.*
        *Prudential-Bache Securities*, 112 F.3d 723 (4th Cir. 1997)

This matter went to arbitration because under rules of the National

Association of Securities Dealers to which all broker-dealers and brokerage firms

must subscribe, disputes "arising out of the employment or termination of

employment" must be resolved in arbitration.  App. 395.  Were the arbitrators to

have awarded damages on any dispute not arising out of the employment or the

termination of the claimants, such award would exceed their powers and be subject

to vacatur under 9 U.S.C. §10(a)(4).  The question thus arises as to the proper

construction of the phrase "arising out of the employment or termination of

employment."

This court addressed the matter in *Zandford v. Prudential-Bache Sec.*, 112

F.3d 723, 729 (4th Cir. 1997): "The proper question is whether resolution of the

claim depends upon evaluation of a party's performance either as a broker or as an

employer of brokers during the time of the contractual relationship." *Accord,*

*Aspero v. Shearson Am. Express*, 768 F.2d 106 (6th Cir. 1985); *Fleck v. E.F. Hutton*

*Group*, 891 F.2d 1047, 1053 (2nd Cir. 1989).

Under this test, where assessing the merits of a claim does not require

evaluation of the claimant's performance as broker or the employer's performance

-38-

as an employer of brokers, the claim is not arbitrable under the NASD rules. *Id.*

Moreover, the test in question is to be applied separately to each of the several

claims in a given case, with vacatur of a given claim being granted or denied upon a

finding limited to that claim. 112 F.3d at 729-30.

The fact that Raymond James' counsel perceived a conflict between his

clients, to the point of withdrawing from representing one of them in an ongoing

matter, does not implicate either his clients' performance of their duties as brokers

or Raymond James' performance of its duties as an employer of brokers. All it

implicates is a lawyer's perception, correctly or incorrectly, of a situation which

rendered ongoing joint representation inappropriate from the standpoint of legal

ethics. Had claimant Bishop been wholly innocent of the work-related wrongdoing

of which he was suspected, counsel would have been well advised, not to say

ethically required, to withdraw from his representation had counsel nevertheless

been of the understanding that his clients were actually or potentially in conflict

with each other.[14]   None of this has anything to do with claimant Bishop's

performance as a broker or  Raymond James' functioning as an employer of

_____

[14]The job of the company's vice president and general counsel includes
defending the company in NASD party actions. Brokers against whom claims are
made personally are given the opportunity to be represented by the corporate
counsel at reduced rates. In the event of a conflict, it is obvious that the general
counsel will continue with the representation of his company.

-39-

brokers.  The emergence of the perceived conflict, followed by the withdrawal of

legal representation from clamant Bishop, thus do not qualify as a matter falling

within the arbitrable ambit of *Zandford*.[15]  Since the arbitrators handed down an

award on a matter not arbitrable under the NASD protocol that established and

delimited their powers, vacatur is appropriate under U.S.C. §10(a)(4).


## Conclusion

Judge Payne struggled to save claimants' awards in this case.  He initially

offered them the benefit of all doubts, articulated his concerns, and solicited

clarification which might preserve the awards.  Faced with a response which made a

bad situation worse, Judge Payne properly vacated the awards, now plainly

confirmed as untenable.  Claimants do not agree with Judge Payne, but they have

offered insufficient grounds for this court to reverse his decision.  The ruling below

should be affirmed.  Because of the highly unusual and palpable irregularities

justifying vacatur here, the court may proceed in the confidence that affirmance

does nothing to disturb the judiciary's support of and deference to arbitration as a

---

[15]It does not appear that the arbitrators considered the breach of fiduciary
and legal duties claim to refer to claimants Scanlon and Hamant.  Nothing in the
decision or the clarifying letters addresses the circumstances of these two claimants
as opposed to that of claimant Bishop.  This was not lost on Judge Payne.  App.
384, 406.

-40-

preferred mode of problem resolution.

Respectfully submitted,

RAYMOND JAMES FINANCIAL
SERVICES,

By counsel

Dated:   April 23, 2009

Counsel for Appellee:

//s// Stephen G.  Cochran
Stephen G. Cochran, #12956
Haight, Tramonte, Siciliano,
   Yeonas, Roberts & Cochran, P.C.
8221 Old Courthouse Road, #300
Vienna, VA 22182-3839
703-734-4800 / fax:  703-442-9532
scochran@htslaw.com

Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com
RaymondJames\AppealPleadings\AppelleeBrief

-41-

## Certificate of Service

I, Stephen G. Cochran, hereby certify that on this 23rd day of April 2009, I electronically filed the foregoing Brief of Appellee Raymond James Financial Services, Inc. with the clerk of the court, which will notify counsel of same.

Jay J. Levit, Esq.
10132 West Broad Street
Glen Allen, VA 23060
jaylevit@msn.com

Scott Gregory Crowley, Sr., Esq.
7201 Glen Forest Drive, #106
Richmond, VA 23226
cclawva@aol.com

//s// Stephen G. Cochran
Stephen G. Cochran, #12956
Haight, Tramonte, Siciliano,
   Yeonas, Roberts & Cochran, P.C.
8221 Old Courthouse Road, #300
Vienna, VA 22182-3839
703-734-4800 / fax: 703-442-9532
scochran@htslaw.com

Counsel for Appellees

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 09-1038          **Caption:** Raymond James Financial Services v. Thomas Bishop, et al.

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]*

☑    this brief contains 8,870 _____ *[state the number of]* words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐    this brief uses a monospaced typeface and contains _____ *[state the number of]* lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

☑    this brief has been prepared in a proportionally spaced typeface using WordPerfect X3 _____ *[state name and version of word processing program]* in 14 point Times New Roman _____ *[state font size and name of the type style]; or*

☐    this brief has been prepared in a monospaced typeface using _____ _____ *[state name and version of word processing program]* with _____ _____ *[state number of characters per inch and name of type style].*

(s) Stephen G. Cochran _____

Attorney for Appellee _____

Dated: 4|23|09 _____